May it please the court. Good morning, Your Honors. My name is Justin Strother from Diamond McCarthy and I represent Unlockd, the plaintiff appellant. There are two areas that I would like to cover in my argument. Oh, thank you. I would like to reserve three minutes for rebuttal, please. All right. I'll try to help you out, but keep your eye on the clock, please. Will do. There are two areas I would like to cover today in my argument. The first is that the district court ruled against Unlockd at the pleading stage on one ground only, and that is, according to the district court, that Unlockd had failed to plead injury to the marketplace and had only pleaded injury to itself. We believe that is demonstrably false. The second area is, while the district court did not address any of Google's other arguments, Google does ask this court to uphold the dismissal on alternative grounds, the primary one being that, according to Google, Unlockd's complaint does not fit into the Aspen skiing exception. So that would be my second area. Moving on to antitrust injury first, the district court wrote that Unlockd, and I quote, offered no factual support from which the court could assume that harm to plaintiff is somehow tantamount to harm to this entire market. Contrary to what the district court wrote, Unlockd not only plausibly pleaded injury to the marketplace, it did so thoroughly and explicitly. What's the market? Digital advertising. What's the breadth of your market? Well, we pleaded alternatively. The breadth of the market is all digital advertising of the main two varieties, which would be on any sort of digital instruments, including mobile phones, which is our case. Nationwide and some other foreign countries as well. Six total countries, but alternatively just the United States. That's a very broad market. Broad is one word, Your Honor. The market is the market with regard to digital advertising. Is it a market where similar products are now currently being offered? Similar, yes, Your Honor. For example, Google still is offering digital advertising through its search mechanisms. So tell me again where the district court erred. You're boxed out of the market, a very big market, in which similar products are still currently being offered. So what's the injury to the market versus the injury to unlock? Certainly, Your Honor. In the digital advertising marketplace, there are two varieties of customers. So I'd like to focus there and demonstrate how the injury reaches those customers, which I think is something that this court's precedent invites. The two varieties of customers are, number one, the end user, the human being who is viewing the advertisement on their digital device. The other variety of customer or consumer would be the advertisers who are buying ad space in which to digitally have their advertisements published to these end consumers. Both of those are customers in the digital advertising marketplace, and both of them were harmed. The two most evident places we point this out in our complaint are with regard to the end user. Unlock's advertising system had the end users receiving rewards. They were monetarily being rewarded for opting into the system where they would view these advertisements. And by 2018, that figure reached $122 million, and it was projected to be almost a half billion dollars in the next five years. After Unlock was banned by Google, that number went down to zero. So that is a demonstrable injury directly to the consumer's pocketbook, and that alone should carry the day. That is one solid injury, and that's all that Unlock has to do. With regard to the advertisers, they were similarly harmed. The advertisers pay a rate for digital advertising that's called CPM, which somehow stands for thousands of impressions, a thousand views of an advertisement. In the years from 2018 to 2022, beginning with Unlock's banning, that price that advertisers paid for similar advertising in the digital advertising marketplace tripled or almost tripled. That is a significant harm felt by the main participants in this marketplace. It has nothing to do with injury to not just Unlock, but competitors similarly situated to Unlock, Your Honor. And so we believe that those two injuries carry the day. There are multiple other injuries through dozens and dozens of paragraphs, but I'm going to move on in the interest of time. I'd like to move on to the Aspen skiing exception. To meet the Aspen skiing exception, Unlock has to plead the following, that a monopolist gave up a voluntary and profitable course of dealing in a way that sacrifices short-term profit that makes no economic sense except to exclude a competitor. And this is precisely what Unlock pleaded. There was definitely a two-year voluntary course of dealing. Google initially approved Unlock's apps and then investigated over a period of a couple of years, intermittently reversing course and saying, we need to know more. This was not just a mechanical review of Unlock's business practices and their app, but face-to-face meetings and conversations in various places, including Dublin, at a very high level. These are not just the people at the very bottom at Google who are every single time Google looked, does Unlock meet our policies, and it found it did. It only reversed course when Unlock became such a big threat and was about to have an IPO, enabling it to become an even bigger threat, to pull more advertisers over to Unlock's superior product and away from Google's inferior product. And I'd like to explain what I mean by that briefly. The way that a digital advertising product can best be reviewed is click-through rate. How many times does someone see an ad and actually click on it and go do something on that? Unlock's click-through rate ultimately not only exceeded the marketplace average, but it exceeded Google's average. And so Unlock became a significant threat and was beginning to be moneyed in the marketplace and was going to be able to threaten more and more Google. This relationship was profitable to Google. Google received somewhere between 20 and 30 percent of the share of Unlock's revenue, and so with Google banning Unlock, Google was itself hurt, and that is what Aspen Skiing asked to have happen. Aspen Skiing also says, but wait, is there a valid business reason that would otherwise explain a monopolist allowing themselves to be financially harmed? Google did in its policy suggest that consumer experience was a policy reason to support it banning Unlock, but that is pretext. And pretext is something that Unlock pleaded in great detail. And I'd like to, I know I'm down to my three minutes, but I'm going to take one more minute, I think. The idea of pretext comes not just from this court's precedent, including in the ImageTech versus Kodak case, and also more recently the coronavirus reporter case in 2023. It goes all the way back to Aspen Skiing. That case went to the U.S. Supreme Court only after a jury trial and not at the pleading stage. And the defendant in that case gave a pretextual reason for refusing to continue to participate in a multi-ski area pass. And one of its reasons was, hey, this is administratively uncumbersome. And that's because we don't want to take coupons at our booths to allow for these multi-area passes to be used. The Supreme Court looked at that and said, I'm sorry, that's pretextual, that's no reason at all. You are using coupons at your other areas. That's exactly the same sort of pretext that Unlock has pleaded here, which is when Unlock was banned, Google did allow a smaller competitor named Poster to continue on. And after Google was banned, and this is another way Google injured itself, Google dug into its short-term pockets to invest in a competitor called Glance that was going to be doing the exact same thing as Unlock. Here, I'll reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court, Dee Bancel, on behalf of Appellee Google. The threshold question in any private antitrust case is whether the plaintiff has antitrust standing such that they can seek redress under the antitrust laws. The plaintiff's answer is no. The plaintiff's answer is no.  Despite multiple opportunities, Unlock has failed to plausibly allege that it has such standing because it has not plausibly alleged antitrust injury. We therefore ask this panel to please affirm the lower court, and in the alternative, we ask the panel to affirm on the grounds that plaintiffs have failed to plausibly plead a Section 2 violation. Even if all of Unlock's allegations are taken as true, those allegations are insufficient to constitute antitrust injury for four independent reasons. One, as my friend just discussed, Unlock only pled harm to itself, not harm to competition as a whole. Two, its allegations are conclusory, unspecified by any fact, unsupported. Three, even if all of those allegations are taken together and all inferences are drawn in favor of the plaintiff, they do not hold together to plead a plausible theory of injury. And four, Unlock pleads allegations of harm in markets in which they do not participate and which have nothing to do with this litigation. There is no doubt that Unlock's complaint describes losses to itself. It describes its lost partnerships, its lost revenues, its lost potential. But where it fails is when it tries to describe harm to the marketplace. As the lower court aptly wrote, and this is at 3 ER 366, Unlock's injury argument collapses into a single conclusory point. Consumers were harmed because they were unable to benefit from Unlock's innovative business model. There's certainly that, but counsel did talk about the harm to consumers and to advertisers. To what extent at this stage do we consider sort of the magnitude of the harm? I mean, I think the difficulty for their case is the bigger the marketplace with the number of players involved, the harder it is to demonstrate antitrust injury, but it's not only the revenues to Unlock, right? There are some consumer allegations of consumer and advertisers who are deprived of the opportunity to avail themselves of Unlock's services. You're exactly right, Your Honor. They have a real problem here, given that the market they have pled is astonishingly broad, okay? This is a digital advertising market that includes every company that offers digital advertising that can be consumed over the internet in six countries, and they would like this court to believe that the removal of a singular app is going to have any impact on prices, output, innovation. So plaintiff's counsel talked about the rewards, for example, the loss of the rewards to plaintiffs, but they have conceded that every player in this market is a reasonable substitute. If a user cannot get the rewards from they have conceded that they can get similar benefits from any of the players in that very, very broad market. So their legal theory doesn't hold together, and this circuit's opinion in Summers v. Apple is similar in that the theory of harm was not plausible, and this circuit found that that was sufficient to not allow the claim to go forward. In addition, the allegations that do put forth about prices, for example, there is a singular paragraph that talks about prices potentially going up, and the lower court correctly pointed out that is the only paragraph that comes even remotely close to alleging something akin to harm, but there are some real problems with that paragraph. So first, and this is at paragraph 247, which your Honor is at the record at 1ER85. So that paragraph, first, it does not tell us the geographic range in which the prices go up. Second, it doesn't tell us what the precise conduct is that resulted in the supposed price increase. For example, they say, exclusion of unlocked from the digital advertising market and Google's other competitive, anti-competitive conduct. As Judge Gilliam correctly wrote, there is no way to link any harm to any injury. And then the third problem is that we don't know what types of ads within this very broad market supposedly had this price increase. They talk about digital ads for the type that Unlocked was supplying, but of course that is one specific type of advertising in the very broad market that they alleged. And so their allegations suffer from being conclusory and also for not putting together a legal theory that can plausibly plead injury. As the circuit said on this very point, as the circuit said in Liz Shockley, although proof of plaintiff's allegations would establish harm to their business interests, such proof would not standing alone show injury to competition as a whole. Now, as we understand plaintiff's papers, they have two responses. First, they argue that their harm is the antitrust injury. We've already addressed that. Second, they talk about a range of harms that they supposedly suffered in other markets. And here, they import paragraphs from the Department of Justice's complaint in a completely separate litigation in the Eastern District of Virginia. However, Unlocked does not participate in those markets. And this circuit is clear that a plaintiff cannot suffer harm in markets in which they don't compete. And to highlight this point, Your Honor, we would point the court to 2ER156 footnote 4. And that's where the Department of Justice very clearly explains that their markets are limited to web advertising. And within that footnote, they expressly carve out digital advertising, sorry, mobile, digital advertising on mobile apps. And of course, Unlocked only offers advertising on mobile apps. And so, as this circuit has said, a plaintiff cannot allege injury in markets in which they do not compete. Your Honor, I have more that I can say unless this panel has any questions. Otherwise, I'm happy to sit down. Let me see if my colleagues have any additional questions. All right. Thank you, counsel. Thank you. Your Honor, let me begin by saying my friend criticized the one paragraph and said, but there's just one paragraph that talks about price. That's all that we need. In fact, we don't even need price to prove injury to the marketplace, but we did. But I find it not a fair criticism to say, but it was only in one paragraph. That's more than enough. And the criticisms of that one paragraph would go to the weight of that assertion and not the fact or not the quality of whether it was plausible or not. Geographically, that goes to weight. The type of injury or the type of advertisement that was being priced, we clearly pleaded that it was the type that Unlocked was selling. And finally, the effect on the price and what the precise effect was goes to an issue of magnitude of effect, not existence of effect. We believe that under PLS.com, this court's precedent, that removing a nation competitor from the marketplace can itself equal injury to competition. But as counsel has pointed out, and less shockingly, it need not. And so this court can decide on the basis alone that Unlocked was removed that there was injury. However, the court can also decide that that alone does not qualify. We have given this court and other reasons to find that the marketplace was injured. When I hear the lower court or my friend say that there were no allegations of injury to the marketplace, I really don't know how they could possibly say that because they are ignoring what is plainly pleaded there and are dispensing with thorough and plausible pleadings as conclusory when we have metrics and data to back up what we say the injury to the marketplace is. Thank you. All right. Thank you very much to both sides for the argument this morning. The matter is submitted.
judges: NGUYEN, VANDYKE, Huie